IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00148-RBJ

TOBY MARTINEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant.

## ORDER

    Toby Martinez appeals from an Administrative Law Judge's denial of social security disability benefits. The matter has been fully briefed, and both parties have waived oral argument.

**Standard of Review**

    This appeal is based solely on the administrative record compiled in agency proceedings below. The Court may reverse the agency's decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not supported by the law." 5 U.S.C. 706(2)(A). In making that decision the Court determines whether the record "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). More than a "scintilla" of evidence but less than a preponderance is required. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

**Facts**

Mr. Martinez, age 49, was employed by a company called Western Forge for 27 years doing a variety of physically demanding labor work. In March 2007 he went on short term disability due primarily to knee problems. He had knee replacement surgery on one knee in June 2007. He continued thereafter to experience knee problems and back pain. R. 236.

On September 10, 2007 he applied for Social Security Disability Insurance benefits. R. 93-95. The Regional Commissioner of the Social Security Administration notified Mr. Martinez of the denial of his claim by letter dated October 26, 2007. R. 55-57. The denial was based on a finding that his condition was not expected to remain severe enough for 12 consecutive months to prevent him from working. The denial indicated that the medical evidence showed that he had made a good recovery from knee replacement surgery; that a recent examination showed that his other knee was normal; and that the evidence was that by March 2008 he should be able to return to work, albeit perhaps lighter and less demanding work. *Id.* at 55.

However, he did not return to work, and he has not worked since March 3, 2007. R. 30-33, 42. On January 24, 2008 a nurse practitioner, Emelin Martinez, completed a report indicating that he would be incapacitated for six months. R. 239, 276. On September 30, 2008 she saw Mr. Martinez again and noted that he was still reporting significant pain that prevented him from working. R. 280. She referred Mr. Martinez to a physician for evaluation for a possible second knee replacement. R. 278, 280.

Meanwhile, Mr. Martinez had requested a hearing before an administrative law judge. At the hearing, which was held on October 23, 2008, he testified that after his knee replacement surgery, which was successful, he developed problems with his other knee and was anticipating possible replacement surgery for that knee as well. He also stated that he had developed back

and hip pain. He testified that he needs to stand up and stretch after sitting for 15 to 20 minutes; that he needs to sit down if he stands for about 30 minutes; that he can walk two or three blocks without sitting; and that he can lift about 25 pounds. R. 31-34.

At the time of the hearing Mr. Martinez was living with and being supported by his mother. He had a driver's license but testified that he does not drive often because he was scared that he couldn't push the brake quickly. He passes the time with activities such as watching television, fishing occasionally, doing physical therapy at home when he can, and spending time with his children and grandchildren. He states that he does not do laundry, cook, yard work or many household chores. R. 44-45. He has a ninth grade education and does not read well. At the time of the hearing he had been on medication for depression for about three months. R. 35-41.

The ALJ asked a vocational expert to assume a hypothetical individual of the same age, education and past work experience as Mr. Martinez. The ALJ continued as follows:

> Further, assume that this individual could only lift or carry up to 10 pounds frequently and 20 pounds occasionally. This individual would require a sit/stand option while remaining at the workstation, meaning that the individual could sit or stand at will while performing assigned duties. The individual could stand or walk with normal breaks for a total of only two hours in an eight-hour workday.

R. 48.

Based on the hypothetical, the expert testified that the individual could not return to the type of work Mr. Martinez had done in the past. *Ibid.* The expert testified, however, that the hypothetical individual could work as a dispatcher, an information clerk or a scale attendant. He stated that more than 1300 dispatcher and information clerk jobs and 121 scale attendant jobs are available in Colorado. R. 48-49.

The ALJ further modified the hypothetical to restrict the individual to lifting or carrying less than 10 pounds frequently, up to 10 pounds occasionally, and standing or walking with normal breaks for only two hours in a normal eight-hour work day. The expert testified that this hypothetical individual could handle the same three types of jobs. R. 49-50.

The ALJ then modified the hypothetical to provide that the individual could not sustain the concentration, persistence and pace necessary to work eight hours a day, five days a week. The expert testified that there would be no work for such an individual. R. 50.

Continuing on the theme of the hypothetical man, Mr. Martinez' counsel asked the expert to assume a person who can sit for no more than four hours during an eight-hour day, stand for no more than two hours during the day, and walk no more than one hour during the day. Such a person likewise could not handle full-time employment according to the expert. R. 50-52.

On January 28, 2009 the ALJ issued a decision denying the claim. R. 14. The ALJ found that Mr. Martinez had developed osteoarthritis of the knees; that he had undergone a right knee total replacement; and that medical records through September 2008 documented that he had continue to complain of pain in his knees through that time. R. 19. The ALJ also noted, from the medical records, that he had participated in physical therapy with good results, and that although there was mention of hypertension, it was reasonably well controlled with medication. *Ibid.*

The ALJ went on to find that because no treating or examining physician had reported necessary clinical, laboratory or radiographic findings establishing listed impairments, the file "does not support an inability to ambulate effectively for a period of 12 continuous months as is required by applicable regulations. Rather, the ALJ found that Mr. Martinez has the residual functional capacity to perform sedentary work. R. 20. The ALJ interpreted Mr. Martinez'

testimony as establishing that he could perform household chores in 30 minute increments two to three times per month; he could sleep, drive a car, manage his own finances and participate in sedentary social activities. The ALJ acknowledged Mr. Martinez' testimony about problems lifting, walking, sitting, standing, reaching, squatting, bending, kneeling and stair climbing; and his ninth grade education with no GED; and his feeling of being unable to work due to knee, hip and back pain. *Id.* at 20-21. However, she found that his statements were not credible "to the extent they are inconsistent with the ALJ's residual function capacity assessment." R. 21.

Following the adverse ruling by the ALJ, Mr. Martinez requested review by the Social Security Appeals Council. R. 8-10. The request was denied, R. 1-7, and this appeal followed.

**Conclusions**

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) in deciding whether Mr. Martinez was disabled. R. 19-25. Her finding that he had not engaged in substantial gainful activity (step one) is undisputed.

Step two addresses the severity of the impairment. The ALJ found that Mr. Martinez had severe impairments, i.e., osteoarthritis of the knees, had undergone a knee replacement, and continued to have pain in his knees. These findings are supported by substantial evidence and meet the duration requirement of § 404.1509.

Step three requires a determination whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.R.R. Part 404, Subpart P, Appendix 1. The ALJ found that Mr. Martinez had not shown that he had an impairment or combination of impairments that met the criteria, because no treating or examining physician had reported any of the necessary clinical, laboratory or radiographic findings specified therein. R. 20. I agree that the record before the ALJ did not contain a disability report from a physician. However, it

5

contains the evaluation of nurse practitioner Martinez that in January 2008 Mr. Martinez would be incapacitated from working for another six months. It contains her report that at the end of September 2008 Mr. Martinez was still reporting significant pain that prevented him from working. The record also contains his uncontroverted testimony at the ALJ hearing that he was experiencing substantial pain and was seriously incapacitated in his ability to sit for long periods, stand for long periods, walk long distances, or lift much weight.

The ALJ indicated that she had specifically considered subsection 1.00 ff. concerning musculoskeletal impairments. However, it does not appear to the Court that she gave any weight to what I view as substantial evidence of musculoskeletal impairments. This Court is not able to find that the ALJ's finding as to step three is supported by substantial evidence.[1]

Step four is the ALJ's assessment of the claimant's residual functional capacity to perform work. The regulation states, "[i]f you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ agrees that Mr. Martinez cannot return to the type of work he previously performed at Western Forge or anything close to it.

Step five is a determination whether the claimant can do any other work considering his residual functional capacity and other factors. The ALJ found that Mr. Martinez had the capacity to perform sedentary work limited to occasional pushing and pulling bilaterally with his lower extremities and occasional kneeling and crawling. She also found that, because of his educational level, Mr. Martinez is further limited to work that requires no more than basic

---

[1] The ALJ had no opportunity to consider the "new evidence" that was tendered by Mr. Martinez' attorney and accepted by the Appeals Council as part of the administrative record. R.1-3, 294-320. However, the "new evidence" includes a physician's questionnaire completed on May 15, 2009, that lends substantial credence to the incapacitating effects of Mr. Martinez' musculoskeletal problems.

reading or math skills.  The ALJ cited and apparently credited the vocational expert's testimony that Mr. Martinez could work as a dispatcher, an information clerk or a scale attendant.

The vocational expert did no more than comment on four hypothetical scenarios.  Those assessments of a hypothetical person, two of which themselves produced the expert's assessment that such a person could not work, provide no credible evidence that this man can perform sedentary work.  Further, they provide no credible evidence that he could work as a dispatcher, an information clerk, or a scale attendant.

**Order**

The decision of the ALJ is reversed.  The case is remanded to the Commission for further proceedings before the ALJ, particularly, reconsideration of steps three, four and five based on all currently available evidence.

DATED this 15th day of November, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge